J-A12003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANTHONY D'ANTONIO, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM BEAM AND UNIVERSAL TECHNICAL INSTITUTE, INC., | |
| Appellants | No. 2309 EDA 2015 |

Appeal from the Order Entered July 10, 2015
In the Court of Common Pleas of Chester County
Civil Division at No(s): No. 2015-02417

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JUNE 22, 2016**

William Beam and Universal Technical Institute, Inc., (collectively "Appellants") appeal the Order entered in the Court of Common Pleas of Chester County on July 10, 2015, denying their Petition to Compel Arbitration and Stay the Judicial Proceedings.[1]  Upon our review of the

---

[1] In its Opinion per Rule of Appellate Procedure 1925, the trial court expressed its view that this appeal is interlocutory and noted that Appellants did not file a motion for reconsideration.  42 Pa.C.S.A. § 7320(a)(1) provides that an appeal may be taken from a court order denying a party's application to compel arbitration.  In addition, Pa.R.A.P. 311(a)(8) states an appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from an order "which is made appealable by statute or general rule."  **See also Elwyn v. DeLuca**, 48 A.3d 457, 460 n. 4 (Pa.Super. 2012).

*Former Justice specially assigned to the Superior Court.

record, we reverse the trial court's refusal to compel this action to arbitration and remand for arbitration.

The trial court set forth the background of this case as follows:

In 2006, Appellee Anthony D'Antonio submitted an application for employment at Appellant UTI's Exton, Pennsylvania campus. As part of the employment application and as a condition of employment, Appellee was purportedly required to execute an agreement to arbitrate. The terms of the agreement to arbitrate, in relevant part, are as follows:

> I further agree that, should an offer of employment be extended to me, any dispute arising between UTI, Inc. and me: (I) in connection with my leaving employment, either voluntarily or involuntarily; and /or (ii) in connection with my employment (whether or not it involves my leaving employment), which dispute falls within the jurisdiction of the Equal Employment Opportunity Commission (and /or any counterpart state agency), will likewise be resolved exclusively through the process of arbitration, pursuant to the rules of the American Arbitration Association.
>
> I understand that this arbitration agreement covers any and all claims that I might bring under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 as amended, including amendments to the Civil Rights Act of 1991, the Americans with Disabilities Act, and any claims related to the foregoing asserted under the law of contract and /or tort.

Appellee was hired as an instructor in the Education Department of UTI's Exton, Pennsylvania campus and was employed by Appellant for eight (8) years. In 2014, Appellant terminated Appellee's employment.

On or about March 19, 2015, Appellee filed a Complaint in the Court of Common Pleas of Chester County against Appellants UTI and William Beam. Appellant Beam was Appellee's supervisor at the time that Appellee's employment was terminated. Appellee's Complaint asserted the following claims: (1) interference with a contract; (2) interference with a

prospective contract; (3) false light invasion of privacy; (4) defamation; (5) disparagement; (6) civil conspiracy; and (7) breach of contract. Appellee alleges that Appellant Beam acted outside the course and scope of his employment when he committed the described tortious acts.

On or about April 30, 2015, Appellants filed a Petition to Compel Arbitration and Stay the Proceedings Pending Arbitration. In the Petition, Appellants argued that the clause "which dispute falls within the jurisdiction of the Equal Employment Opportunity Commission" modifies only subsection (ii) related to disputes in connection with [ ] employment and does not have any effect on subsection (I) related to "leaving [ j employment, either voluntarily or involuntarily." As a result, Appellants claimed that Appellee was bound to arbitrate the disputes pursuant to the agreement to arbitrate as each of the claims raised in Appellee's Complaint were concerned with his role as a UTI employee. We disagree. By Order dated July 10, 2015, this [c]ourt denied Appellants' Petition. Appellants filed a timely Notice of Appeal on July 30, 2015. Appellants subsequently filed a timely Concise Statement of Errors on August 26, 2015.

Trial Court Opinion, filed 9/14/15, at 2-3.

In their Brief, Appellants present the following Statement of the Question Involved:

Do [Appellee's] claims, all of which relate to and arise out of his termination, fall within the scope of the arbitration agreement, which encompasses, among other things, "*any dispute arising between UTI, Inc. and me [] in connection with my leaving employment, either voluntarily or involuntarily…*"?

Brief of Appellants at 4 (emphasis in original).

The determination of the existence of an arbitration agreement and of whether a dispute is within the scope of the arbitration agreement presents questions of law and our scope of review is plenary. ***Pisano v. Extendicare Homes, Inc.,*** 77 A.3d 651 (Pa.Super. 2013), *appeal denied,* 624 Pa. 683,

86 A.3d 233 (2014). Our review of an order refusing to compel arbitration is:

> [l]imited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. Where a party to a civil action seeks to compel arbitration, a two-part test is employed. First, the trial court must establish if a valid agreement to arbitrate exists between the parties. Second, if the trial court determines such an agreement exists, it must then ascertain if the dispute involved is within the scope of the arbitration provision. If a valid arbitration agreement exists between the parties, and the plaintiff's claim is within the scope of the agreement, the controversy must be submitted to arbitration.

***Provenzano v. Ohio Valley General Hospital***, 121 A.3d 1085, 1094–95 (Pa.Super. 2015) (citation omitted). Courts must make the aforesaid determinations with an awareness that:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.
>
> To resolve this tension, courts should apply the rules of contractual constructions, adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. . . .
>
> [T]he court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is

most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement. If it appears that a dispute relates to a contract's subject matter and the parties agreed to arbitrate, all issues of interpretation and procedure are for the arbitrators to resolve.

*Id.* at 1095 (citations and quotation marks omitted).

Herein, Appellants do not dispute the trial court's finding that Appellee entered into a valid and enforceable agreement to arbitrate with them, and upon our review of the record, which includes Appellee's online application for employment at UTI's Exton campus, we agree. *See* [Appellants'] Petition to Compel Arbitration and Stay the Judicial Proceedings at Exhibit 1.[2]

_____

[2] Appellee's argument in his appellate brief centers around his position that the trial court never decided whether an agreement to arbitrate exists between the parties; therefore, he asks this Court to dismiss this matter and remand for a determination as to whether the parties entered into a valid agreement to arbitrate all disputes. Contrary to Appellee's contentions, in its July 10, 2015, Order the trial court found the parties had entered into a valid arbitration agreement. *See* Trial Court Order, filed July 10, 2015, n.1 (stating "[c]learly a valid agreement exists, but it is limited in scope.") Moreover, in its September 14, 2015, Opinion, the trial court reiterated its view that the parties were bound by an existing and valid agreement to arbitrate. *See* Trial Court Opinion, filed 9/14/15 at 5 (indicating "although Appellee disputes that he agreed to the arbitration provision at issue, it is clear that there is an existing and valid agreement to arbitrate"). Appellee never filed a cross-appeal challenging the trial court's determination in this regard, although he also posits in his brief that no agreement to arbitrate exists because, as he stated in his deposition testimony, he never completed an application for employment either in writing or electronically, and there is no direct evidence of record to the contrary. Brief of Appellee at 7-11. As such, despite the fact that Appellee "prevailed" in the sense that the trial court held he was not compelled to arbitrate the claims raised in his complaint, he was nevertheless aggrieved in that the trial court's holding encompassed a finding that he and Appellants had entered into a valid, albeit limited, agreement to arbitrate. *See Pittsburgh Constr. Co. v.*
*(Footnote Continued Next Page)*

Rather, Appellants' claim challenges the trial court's determination that the dispute does not fall within the scope of the arbitration agreement. Brief of Appellants at 10. In reaching its decision the plain language of the arbitration clause pertains only to those claims that fall within the jurisdiction of the EEOC such that the agreement does not require the parties to arbitrate the dispute, the trial court reasoned as follows:

> In [their] Petition, Appellants argued that the clause "which dispute falls within the jurisdiction of the Equal Employment Opportunity Commission" modifies only subsection (ii) related to disputes in connection with [Appellee's] employment and has no effect on subsection (i). Thus, Appellant[s] would have us find that the first category of disputes, regarding the voluntary or involuntary termination of employment, is not limited in scope to claims that fall within the jurisdiction of the EEOC. Appellant[s] offer[] no support for this construction and/or interpretation of this provision of the agreement.
>
> We read this clause differently. Indeed, when read as a whole and with the conjunction "and",[3] it is clear to this [c]ourt that disputes arising both to the termination of employment and employment in general are subject to arbitration only if such disputes fall within the jurisdiction of the EEOC. In making this determination, we focused on reading and interpreting the agreement to arbitrate in its entirety. Having determined that the arbitration terms are ambiguous as a matter of law, we construe the language of the agreement against the drafter, or Appellants, as we are entitled to do. It is simply not a rational construction of the terms of the agreement to interpret the clause as only subjecting some disputes arising out of an

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**Griffith**, 834 A.2d 572, 588-90 (Pa.Super. 2003) (stating a party who prevails may nonetheless be considered an aggrieved party where it did not receive the complete relief it sought and must, therefore, file a cross-appeal under Pa.R.A.P. 511 or risk waiver of that issue). As such, this issue is not properly before us.

3 As indicated above, the conjunction is "and/or."

employee's employment (termination or otherwise) to arbitration if they fall within the jurisdiction of the EEOC while applying a much broader scope of the provision to those disputes that arise from an employee's termination, be it voluntary or involuntary.

Moreover, the provisions of the agreement overlap. Indeed, the claims asserted in Appellee's Complaint fall within both subsections of the Agreement to Arbitration as they are related to his "employment (whether or not it involves [his] leaving employment)" as well as the termination of his employment, whether voluntary or involuntary. In construing the terms against Appellants, we find that the most rational construction of the agreement requires that all disputes relating to Appellee's employment fall within the jurisdiction of the EEOC in order to be submitted to arbitration.

Therefore, because the arbitration clause states that the parties agree to arbitrate disputes which, "fall within the jurisdiction of the Equal Employment Opportunity Commission ..." and there is nothing within the body of the complaint or any ancillary filings in which an allegation is made that would fall within the jurisdiction of the EEOC, Appellee must not be compelled to submit his claims to arbitration.

Trial Court Opinion, filed 9/14/15, at 6-7. To the contrary, we find the plain language of the arbitration agreement requires the parties to arbitrate Appellee's claims.

Subsection (I) of the agreement to arbitrate is preceded by the provision that "any dispute arising between UTI, Inc. and [Appellee]:" and continues "(I) in connection with [Appellee's] leaving employment, either voluntarily or involuntarily;[.]" The conjunction "and/or" follows and immediately precedes Subsection (ii) which states "in connection with [Appellee's] employment (whether or not it involves [Appellee's] leaving employment), which dispute falls within the jurisdiction of the Equal Employment Opportunity Commission (and/or any counterpart state agency

will **likewise** be resolved exclusively through the process of arbitration, pursuant to the rules of the American Arbitration Association."

When read in context and in accordance with common rules of grammar and punctuation, the arbitration clause describes two categories of disputes which fall within its rubric. Subsection (I) which is preceded by a reference to "any dispute" is punctuated with a semicolon, which is used to separate equal and balanced sentence elements. As such, Subsection (I) independently pertains to disputes arising from Appellee's voluntary or involuntarily termination of his employment with UTI. The semicolon indicates that these words are closely related to Subsection (ii) which is immediately preceded by the coordinating conjunctions "and/or[.]" Coordinating conjunctions link words, phrases or clauses of equal importance. Subsection (ii) discusses disputes falling within the jurisdiction of the EEOC whether or not they involve Appellee leaving his position with UTI. Thus, disputes arising from Appellee's leaving the employ of UTI that do not fall within the jurisdiction of the EEOC and/or disputes falling within the jurisdiction of the EEOC will "likewise" be resolved by the arbitration process. The term likewise is an adverb defined as meaning: "1. moreover; in addition; also; too: 2. In like manner; in the same way; similarly." *Likewise Definition*, DICTIONARY.COM, http://dictionary.reference.com/browse/likewise (last visited June 2, 2016). As such, read as a whole, the agreement to arbitrate provides that disputes involving Appellee's leaving his

employment with UTI will also be subject to arbitration as will those disputes which fall within the jurisdiction of the EEOC, whether or not they involve Appellee's leaving his position with UTI.

Stated and viewed another way, the arbitration agreement indicates:

> I further agree that, should an offer of employment be extended to me, any dispute arising between UTI, Inc. and me: (I) in connection with my leaving employment, either voluntarily or involuntarily;
>
> and/or
>
> (ii) in connection with my employment (whether or not it involves my leaving employment), which dispute falls within the jurisdiction of the Equal Employment Opportunity Commission (and /or any counterpart state agency)
>
> will likewise be resolved exclusively through the process of arbitration, pursuant to the rules of the American Arbitration Association.

This interpretation is consistent with other language contained in the agreement to arbitrate provision as well. For instance, the agreement to arbitrate concludes with a statement that Appellee:

> Understand[s] that, by agreeing to use arbitration as the exclusive forum for the resolution of the employment disputes described above, [HE IS] WAIVING THE RIGHT TO ASSERT ANY SUCH CLAIMS IN THE STATE OR FEDERAL COURTS AND WAIVING [HIS] RIGHT TO A TRIAL BY JURY. [He made] this waiver voluntarily, with full knowledge of its effects, and after having had full opportunity to discuss it with persons of [his] choosing.

*See* Candidates Assessment Information Sheet, dated 3/27/06, at 1-2. Following this statement, Appellee's full name appears with an indication

that he accepts this agreement and that the day's date was March 27, 2006. In boldface type, Appellee also was alerted that his acceptance is required in order for him to complete the online application process. *Id*. at 2.

In addition, further evidence of the parties' intent to resolve disputes through the arbitration process is contained in UTI's Employee Handbook under the section entitled **EMPLOYMENT PRACTICES AND GUIDELINES** which stresses the parties agree to arbitrate disputes arising between UTI and its employees. *See* UTI Employee Handbook at 5. Appellee's signature appears on the Employee Handbook Acknowledgement Form which is dated July 13, 2006. *See* Praecipe for Determination, filed July 14, 2015, at Exhibit H.

Appellee's claims raised in his Complaint fall squarely within the scope of Subsection I of the arbitration agreement which pertains to any dispute arising between the parties in connection with Appellee's voluntary or involuntary termination or his employment with Appellants. In his Complaint, Appellee includes counts alleging interference with contract, interference with prospective contract, false light invasion of privacy, defamation, disparagement, civil conspiracy, and breach of employment contract. All of the allegations contained in the Complaint concern to the involuntary termination of Appellee's employment with UTI and the alleged resultant damages he sustained therefrom. Accordingly, we hold that the

trial court erred in denying Appellants' motion to stay and to compel arbitration.

Order denying Appellants' motion to compel arbitration reversed. Case remanded for arbitration. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2016